IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON WOOLEN MILLS, INC.,

      Plaintiff,

                                    3:14-CV-628-PK

v.                                    OPINION AND
                                      ORDER

KRAFF'S MEN'S WEAR CO., INC., DANIEL
P. JOHNSON, and JOHN DOE COMPANIES
1-20,

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Pendleton Woolen Mills, Inc. ("Pendleton"), filed this action against defendants

Kraff's Men's Wear Co., Inc. ("Kraff's"), Daniel P. Johnson (collectively with Kraff's, the "Kraff's

defendants"), and 20 Doe corporate defendants (collectively, the "Doe defendants") on April 16,

2014. Pendleton is in the business of designing, manufacturing, and selling woolen fabrics,

apparel, and blankets on both a wholesale and a retail basis, whereas both the Kraff's defendants

and the Doe defendants are in the business of selling such products on a primarily retail basis.

Pendleton sells its products at wholesale only to retailers with which it maintains an "approved

Page 1 - OPINION AND ORDER

Pendleton trade account," and all its products sold to such retailers are sold pursuant to a sales

order containing a provision stating that the retailer "will not sell the goods, or any part thereof,

to another dealer or to any other reseller, and will not sell the goods through the Internet without

the written consent of Pendleton . . . ."

Prior to the events complained of in this lawsuit, Kraff's was in an "approved Pendleton

trade account" relationship with Pendleton, and moreover had received Pendleton's express

permission to manufacture and sell its own products incorporating Pendleton fabrics bearing

Pendleton's copyrighted designs.  In 2006, however, Pendleton ended its wholesaler relationship

with Kraff's and stopped selling its products directly to Kraff's, and in 2012  Pendleton expressly

withdrew its previously granted permission to Kraff's to produce new products incorporating

Pendleton fabrics bearing Pendleton's copyrighted designs.  Notwithstanding the termination of

Pendleton's wholesaler relationship with Kraff's and the withdrawal of Pendleton's permission to

produce derivative works incorporating Pendleton's copyrighted designs, Kraff's allegedly

continues to retail both what it holds out as authentic, first-quality Pendleton products and

products of its own manufacture incorporating Pendleton fabrics bearing copyrighted designs.  It

is Pendleton's position that since 2006, the Kraff's defendants have acquired Pendleton products

at wholesale rates from the Doe defendants, each of which is an authorized retailer of Pendleton

products with a direct relationship to Pendleton operating under a contractual obligation to

refrain from selling Pendleton products to any reseller such as Kraff's.  It is further Pendleton's

position that the Kraff's defendants have over that same period violated Pendleton's trademarks

and engaged in unfair competition both by using Pendleton's trademarks prominently in the

advertisement and display of Pendleton products and by using their own trademarks, which

Pendleton characterizes as deceptively similar to its marks, in the advertising and display of derivative works incorporating Pendleton fabrics. Arising out of that conduct, Pendleton alleges the Kraff's defendants' liability for copyright infringement under 17 U.S.C. § 501, trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in connection with trademarks in violation of 15 U.S.C. § 1125(a), common-law trademark infringement and unfair competition, and common-law intentional interference with economic relations. Pendleton alleges the liability of each of the Doe defendants for common-law breach of contract. This court has federal-question jurisdiction over Pendleton's federal claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Pendleton's state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is Pendleton's motion (#23) to compel discovery responses from the Kraff's defendants relating to the identity of the Doe defendants from which the Kraff's defendants allegedly obtain their Pendleton fabrics and other products and to the identity of any third parties upon whose services the Kraff's defendants rely in the manufacture or design of their own products. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Pendleton's motion is granted.

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000).

"Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

(i) a deponent fails to answer a question asked under Rules 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33, or

(iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## ANALYSIS

On July 24, 2014, Pendleton served the Kraff's defendants with a set of Interrogatory Requests and a set of Requests for Production of Documents. On August 28, 2014, the Kraff's defendants responded to both sets of discovery requests. Pendleton takes issue with the Kraff's defendants' response to its Interrogatory Requests Nos. 1 and 3, and to its Requests for Production of Documents Nos. 4-10, 14, 16, and 28. Pendleton's Interrogatory Requests Nos. 1 and 3, and the Kraff's defendants' responses thereto, are set forth below.

**INTERROGATORY NO. 1**: Describe with specificity from whom and how [the

Kraff's] Defendants have obtained genuine Pendleton products and/or Pendleton
fabric from January 1, 2006 to the present.

**ANSWER:** [The] Kraff's [defendants] object[] to this Interrogatory on the
grounds that it is overly broad, unduly burdensome, seeks information that is
neither relevant nor reasonably calculated to lead to the discovery of admissible
evidence, is harassing, and seeks information that is confidential and proprietary.
Plaintiff's counsel has conceded that there is no claim that Kraff's['] resale of
authentic Pendleton products, taken by itself, constitutes any infringement or
misappropriation of Plaintiff's intellectual property rights, including by virtue of
the "First Sale Doctrine."  Likewise, Kraff's['] manufacture and sale of products
that include authentic Pendleton fabrics does not constitute any infringement of
Pendleton's copyright or other intellectual property right.  Further, such actions by
Kraff's do not constitute any "tortious interference" with Pendleton's contracts or
business expectations because, *inter alia*, such acts are not unlawful, they are not
confusing to customers, they are justified competitive acts, they do not cause any
harm or damage to Pendleton, and in fact they benefit Pendleton because
Pendleton is fully compensated for its sales of Pendleton products and fabrics.  To
the extent that Plaintiff seeks information from Kraff's to use in building a claim
against Plaintiff's distributors, such an Interrogatory has no purpose other than to
harass Kraff's and to interfere with Kraff's business relationships.  Subject to [the]
Kraff's [defendants'] General and Specific Objections, Kraff's has purchased
authentic Pendleton merchandise directly from Pendleton's retail outlets, from
other outlets that sell Pendleton merchandise, and from various Pendleton
distributors and/or licensees.

\* \* \*

**INTERROGATORY NO. 3:**  Identify each person who is now or has been
responsible for or has participated in the creation, design, and/or manufacture of
apparel, accessories, bags, or any other products manufactured, offered for sale, or
sold by Kraff's bearing the PENDLETON Copyrights and/or made in whole or in
part from December 5, 2013, to the present.

**ANSWER:** [The] Kraff's [defendants] object[] to this Interrogatory on the
grounds that it is overly broad and unduly burdensome, and because the terms
"Pendleton Copyrights," "Pendleton fabric," and "bearing the PENDLETON
Copyrights," are overly broad, unduly burdensome, vague and ambiguous, and
imply that Pendleton's asserted copyright registrations are in fact valid and
enforceable.  [The] Kraff's [defendants] further object[] to this Interrogatory as
seeking information that is neither relevant nor reasonably calculated to lead to
the discovery of admissible evidence to the extent that it seeks information
relating to products that are made in whole or in part from authentic Pendleton

fabric, the design(s) for which are not the subject of any claim in this litigation. Further, Kraff's['] manufacture and sale of products that include authentic Pendleton fabrics does not constitute any infringement of Pendleton's copyright or other intellectual property right. Subject to [the] Kraff's [defendants'] General and Specific Objections, Kraff's designs and manufactures and finishes products that are made from and/or incorporate authentic Pendleton fabric in-house, and also relies at times on an outside contractor for assistance in the manufacture of such products. For some items, such as luggage, the underlying goods are manufactured by a third party, purchased by Kraff's at retail, and Kraff's then either adds or has its contractor apply Pendleton fabric to finish the piece. The Kraff's personnel who are involved in the creation, design, and/or manufacture of such items are Daniel Johnson, Christina Johnson, Katy Johnson, and Justin Johnson.

Pendleton's Requests for Production Nos. 4-10, 14, 16, and 28, and the Kraff's defendants'

responses thereto, are set forth below.

**REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to identify all entities or persons from whom Defendants purchased or acquired Pendleton products from January 1, 2006 to the present.

**RESPONSE:** [The] Kraff's [defendants] object[] to this Request on the grounds that it is overly broad, unduly burdensome, seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, is harassing, and seeks information that is confidential and proprietary. Plaintiff's counsel has conceded that there is no claim that Kraff's resale of authentic Pendleton products, taken by itself, constitutes any infringement or misappropriation of Plaintiff's intellectual property rights, including by virtue of the "First Sale Doctrine." Likewise, Kraff's['] manufacture and sale of products that include authentic Pendleton fabrics does not constitute any infringement of Pendleton's copyright or other intellectual property right. Further, such actions by Kraff's do not constitute any "tortious interference" with Pendleton's contracts or business expectations because, *inter alia*, such acts are not unlawful, they are not confusing to customers, they are justified competitive acts, they do not cause any harm or damage to Pendleton, and in fact they benefit Pendleton because Pendleton is fully compensated for its sales of Pendleton products and fabrics. To the extent that Plaintiff seeks information from Kraff's to use in building a claim against Plaintiff's distributers, such a Request has no purpose other than to harass Kraff's and to interfere with Kraff's['] business relationships.

**REQUEST FOR PRODUCTION NO. 5:** All purchase orders, invoices, or other documents showing the specific products purchased, quantities, and

purchase prices for all Pendleton products purchased or acquired by Defendants from January 1, 2006 to the present.

**RESPONSE:** [*See* Response to Request for Production No. 4]

**REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to identify all entities or persons who purchased or acquired Pendleton products on behalf of or in any way for or for the benefit or use of, or resale by Defendants from January 1, 2006 to the present.

**RESPONSE:** [*See* Response to Request for Production No. 4]

**REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to identify all entities or persons from whom Defendants purchased or acquired Pendleton fabric from January 1, 2006 to the present.

**RESPONSE:** [*See* Response to Request for Production No. 4]

**REQUEST FOR PRODUCTION NO. 8:** All purchase orders, invoices, or other documents showing the specific fabric designs purchased, quantities, and purchase prices, for all Pendleton fabric purchased by Defendants from January 1, 2006 to the present.

**RESPONSE:** [The] Kraff's [defendants] object[] to this Request on the grounds that it is overly broad, unduly burdensome, seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, is harassing, and seeks information that is confidential and proprietary. [The] Kraff's [defendants] further object[] to this Request to the extent that it seeks documents relating to authentic Pendleton fabric the design(s) for which are not the subject of any claim in this litigation. Further, Plaintiff's counsel has conceded that there is no claim that Kraff's resale of authentic Pendleton products, taken by itself, constitutes any infringement or misappropriation of Plaintiff's intellectual property rights, including by virtue of the "First Sale Doctrine." Likewise, Kraff's['] manufacture and sale of products that include authentic Pendleton fabrics does not constitute any infringement of Pendleton's copyright or other intellectual property right. Further, such actions by Kraff's do not constitute any "tortious interference" with Pendleton's contracts or business expectations because, inter alia, such acts are not unlawful, they are not confusing to customers, they are justified competitive acts, they do not cause any harm or damage to Pendleton, and in fact they benefit Pendleton because Pendleton is fully compensated for its sales of Pendleton products and fabrics. To the extent that Plaintiff seeks information from Kraff's to use in building a claim against Plaintiff's distributers, such a Request has no purpose other than to harass Kraff's

Page 8 - OPINION AND ORDER

and to interfere with Kraff's['] business relationships.

**REQUEST FOR PRODUCTION NO. 9:** Documents sufficient to identify all entities or persons who purchased or acquired Pendleton fabric on behalf of or in any way for or for the benefit or use of, or resale by Defendants from January 1, 2006 to the present.

**RESPONSE:** [*See* Response to Request for Production No. 8]

**REQUEST FOR PRODUCTION NO. 10:** If a third party purchased either Pendleton products or Pendleton fabric on behalf of or in any way for or for the benefit or use of, or resale by Defendants from any entity, person, or party other than Pendleton from January 1, 2006 to the present, produce all documents related thereto.

**RESPONSE:** [*See* Response to Request for Production No. 8]

* * *

**REQUEST FOR PRODUCTION NO. 14:** Documents sufficient to identify all third party designers or manufacturers of products offered for sale or sold by Kraff's bearing the PENDLETON Copyrights and/or made in whole or in part out of Pendleton fabric from December 5, 2013 to the present. This request includes all third parties who cut, sew, or otherwise participate in any way, manner, or form in the design or manufacture of such products.

**RESPONSE:** [The] Kraff's [defendants] object[] to this Request on the grounds that is overly broad and unduly burdensome, and because the terms "Pendleton Copyrights" and "Pendleton fabric" are overly broad, unduly burdensome [??], vague and ambiguous, and imply that Pendleton's asserted copyright registrations are in fact valid and enforceable. [The] Kraff's [defendants] further object[] to this Request as seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents relating to products that are made in whole or in part from authentic Pendleton fabric the design(s) for which are not the subject of any claim in this litigation. [The] Kraff's [defendants] also object[] to this Request on the ground that it seeks information that is confidential and proprietary. Subject to [the] Kraff's [defendants'] General and Specific Objections, please see Answer to Interrogatory No. 3.

* * *

**REQUEST FOR PRODUCTION NO. 16:** Documents sufficient to identify all

third party designers or manufacturers of products offered for sale or sold by Kraff's bearing the "JUSTIN KRAFF'S" label depicted in paragraph 103 of the Complaint from January 1, 2000 to the present. This request includes all third parties who cut, sew, or otherwise participate in any way, manner, or form in the design or manufacture of such products.

**RESPONSE:** [The] Kraff's [defendants] object[]to this Request on the grounds that it is overly broad and unduly burdensome, including without limitation because this Request covers a fourteen-year period, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [The] Kraff's [defendants] also object[] to this Request on the ground that it seeks information that is confidential and proprietary. Subject to [the Kraff's defendants'] General and Specific Objections, Kraffs designs such products in-house, and manufacturers such products both in-house and through third parties that Kraff's contracts for piece work.

* * *

**REQUEST FOR PRODUCTION NO. 28:**  All communications, including but not limited to e-mails, notes of telephone calls, notes and records (including calendar entries) of in-person meetings, memoranda, and text messages, between Defendants and any third party regarding this civil action.

**RESPONSE:**  [The] Kraff's [defendants] object[] Kraff s objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, the attorney-work product doctrine, and/or any other applicable privilege or immunity. [The] Kraff's [defendants] also object[] to this Request on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [The] Kraff's [defendants] further object[] to this Request because to the extent that Plaintiff seeks information from Kraff's to use in building a claim against Plaintiff's distributers, such a Request has no purpose other than to harass Kraff's and to interfere with Kraff's['] business relationships. Subject to [the Kraff's defendants'] General and Specific Objections, Kraff's is not aware of any responsive, non-privileged documents other than possible communications with its suppliers.

Thus, Pendleton's Interrogatory Request No. 1 seeks the identities of each of the Doe defendants

and Requests for Production Nos. 4-10 and 28 seek documents supporting that identification as

well as documents reflecting the Kraff's defendants' business and other relations with the Doe

defendants (including the identities of and communications with any third parties who may have

Page 10 - OPINION AND ORDER

conducted such relations on behalf of the Kraff's defendants), while Pendleton's Interrogatory No. 3 seeks the identities of any third parties who created, designed or manufactured products incorporating Pendleton's copyrighted designs that have been sold by Kraff's and Requests for Production Nos. 14, 16, and 28 seek documents supporting that identification as well as documents reflecting the Kraff's defendants' communications with such third parties.

It is Pendleton's position that all of the foregoing discovery requests bear on matters relevant to all of its claims as well as to several of the Kraff's defendants' defenses to all of Pendleton's claims against them. The Kraff's defendants take the contrary position that the requested discovery at issue is relevant only to Pendleton's tortious interference with economic relations claim, and do not significantly address Pendleton's arguments that the discovery is potentially relevant both to all of its other claims and to certain of the Kraff's defendants asserted defenses. In connection with that position, the Kraff's defendants argue that they are entitled to summary judgment as to the tortious interference claim, and on that basis argue that Pendleton is not entitled to any of the requested discovery at issue herein.

Pendleton alleges the Kraff's defendants' liability in connection with a total of 31 claims, specifically 25 separately pled claims of federal copyright infringement, four separately pled claims of federal trademark infringement, one claim of trademark infringement brought under the common law of Oregon, and one claim of intentional interference with economic relations brought under the common law of Oregon. Each of Pendleton's 25 copyright infringement claims is expressly premised solely on the Kraff's defendants' alleged conduct in manufacturing and selling products (so-called derivative works) incorporating Pendleton's copyrighted designs. Pendleton's federal trademark claims are one claim of trademark infringement and one of unfair

competition arising out of Kraff's allegedly extensive use of Pendleton's trademarks in advertising its storefront and its products, and one claim of trademark infringement and one of unfair competition arising out of Kraff's use of a label (the "Justin Kraff" label) bearing the same colors as and otherwise purportedly similar to Pendleton's trademarked labels in identifying its products that incorporate Pendleton-produced fabrics; the same conduct likewise underlies Pendleton's single common-law trademark claim. Pendleton's intentional interference claim is premised on Kraff's alleged purchase of Pendleton products at wholesale prices from the Doe defendants, notwithstanding those parties' alleged contractual obligation to refrain from selling Pendleton products to resellers. In relevant part, the Kraff's defendants assert as affirmative defenses to Pendleton's claims against them that Pendleton "has not suffered any damages as a result of [the] Kraff's [defendants'] alleged actions, and that Pendleton's "asserted claims are barred by the first sale doctrine." In addition to the foregoing, Pendleton alleges the Doe defendants' liability for breach of contract in a single claim premised on the Doe defendants' alleged sale of Pendleton products to the Kraff's defendants notwithstanding their alleged contractual obligation to refrain from selling Pendleton products to resellers.

Assuming *arguendo* that the Kraff's defendants could establish their entitlement to summary judgment as to Pendleton's tortious interference claim – for which they have recently moved – I agree with Pendleton that the discovery at issue is relevant to at least some of its remaining claims against the Kraff's defendants and/or to some of the Kraff's defendants' asserted defenses to the remaining claims. As to the first category of discovery at issue – the identities of the Doe defendants and documents reflecting Kraff's business dealings therewith, including the specific fabrics and other products the Kraff's defendants purchased therefrom – the requested

discovery is most clearly relevant to Pendleton's claim against the Doe defendants for breach of contract. Although it appears likely from the Kraff's defendants' opposition to Pendleton's motion to compel that it is the Kraff's defendants' implicit position that Pendleton's claim against the Doe defendants should not be considered in determining the relevance of Pendleton's requests for discovery from the Kraff's defendants, that position (if in fact the Kraff's defendants would endorse it) falls afoul of the plain language of Rule 26(b)(1), which (as noted above) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's* claim or defense," Fed. R. Civ. P. 26(b)(1) (emphasis supplied). The parties cite no case law to suggest that it is inappropriate, notwithstanding the plain language of Rule 26(b)(1), to consider claims involving parties other than the party to which discovery requests have been propounded in determining the relevance of the requested discovery, and I am aware of no such case law. I therefore conclude that the first category of requested discovery is at minimum within the scope of discoverable matter in connection with Pendleton's claim against the Doe defendants.

Moreover, the Kraff's defendants' invocation of the "first sale doctrine" as an affirmative defense (ostensibly to all of Pendleton's claims against them but as a practical matter only as to the 25 copyright claims) places their supplier information squarely at issue in this litigation. The first sale doctrine is a statutorily authorized affirmative defense against claims of copyright infringement. *See* 17 U.S.C. § 109(a); *see also, e.g.*, *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010). Under the doctrine, "'the owner of a particular copy . . . lawfully made under [the Copyright Act], or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy.'"

Page 13 - OPINION AND ORDER

*UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1179 (9th Cir. 2011), *quoting* 17 U.S.C. §

109(a). The legislative history of the Copyright Act clearly establishes the intent of the authors

of Section 109(a) to place the burden on the party asserting the first sale doctrine as an

affirmative defense to establish that the copyrighted work at issue "was lawfully made or

acquired," H.R. Rep. No. 94-1476, 80-81 (1976), and although the Ninth Circuit does not appear

to have weighed in, those district courts of this Circuit that have considered the issue have found

that, in consequence, assertion of the first sale doctrine places supplier information within the

scope of discovery under Rule 26(b)(1), *see, e.g., Adobe Sys. v. Kornrumpf*, Case No.

C-10-02769-CW (DMR), 2011 U.S. Dist. LEXIS 80613, *5 (D. Cal. July 25, 2011); *Bare*

*Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, Case No. 07CV90, 2007 U.S. Dist. LEXIS

90893, *8-11 (D. Cal. December 11, 2007). The first category of requested discovery is therefore

additionally within the scope of discoverable matter in connection with the Kraff's defenses first

sale defense.

      Both the first category of requested discovery and the second category of requested

discovery – the identity of the outside contractor (or contractors) who assisted in the manufacture

of Kraff's products allegedly derivative of Pendleton's copyrighted designs and documents

reflecting Kraff's communications therewith – are likewise relevant to Pendleton's copyright

claims against the Kraff's defendants, in that the question of which Pendleton products in

particular go into Kraff's allegedly derivative products bears directly on that claim, and both sets

of discovery requests are reasonably calculated to lead to discovery of admissible evidence

relevant to that question. In addition, both categories of requested discovery are relevant to

Pendleton's federal trademark claims, in that the Kraff's defendants' intent in connection with

their alleged infringement and/or unfair competition is relevant to the damages available to Pendleton, and both sets of discovery requests are reasonably calculated to lead to discovery of admissible evidence relevant to the Kraff's defendants' intent.[1]

Establishment of the requested discovery's relevance to claims and defenses at issue in this litigation is not the end of the inquiry. The Kraff's defendants offer two arguments in support of the proposition that, even on the assumption that the requested discovery is relevant, Pendleton should not be entitled to an order compelling its production. First, the Kraff's defendants argue that the relevant information is available to Pendleton via more convenient, less burdensome means: specifically, through inspection of the merchandise currently for sale at Kraff's. I find this argument entirely unpersuasive. It is by no means clear that Pendleton could ascertain all of the information sought through its requested discovery through inspection of the goods on display at Kraff's; moreover, inspection of the products currently in stock would have no bearing on the character of the products in stock at any previous material time.

---

[1] By contrast, I disagree with Pendleton's arguments that it is entitled to the requested discovery due to its need to determine the authenticity of the products sold at Kraff's under the Pendleton label and due to its need to establish that the Kraff's defendants' complained-of practices have caused it to incur damages. Pendleton argues that the Kraff's defendants could have violated its copyrights and/or infringed its trademarks through the sale of counterfeit goods under a Pendleton label and could have infringed its trademarks and/or unfairly competed by selling factory seconds under labels suggesting that they were first-quality Pendleton products. I agree with Pendleton that these are logically possible occurrences, but I note that Pendleton's copyright and trademark claims are not pled as if premised on any such passing off of counterfeit or factory-second products as authentic Pendleton products of first quality, but rather are expressly premised, respectively, on the manufacture and sale of unauthorized derivative works and on the Kraff's defendants' extensive use of the Pendleton label in the advertising and display of its goods and of the purportedly deceptively similar "Justin Kraff" label. I reject the argument that Pendleton can establish the discoverability of the requested information by reference to logically possible claims that are clearly outside the scope of its pleading. Moreover, it appears clear that Pendleton can establish damages without reference to the discovery requests at issue.

Page 15 - OPINION AND ORDER

Second, the Kraff's defendants argue that the information requested by and through the first category of requested discovery should be shielded from judicial scrutiny because it is trade secret information proprietary to Kraff's. It is the Kraff's defendants' position, with which I concur, that in the event Pendleton learns the identity of the suppliers at issue in the first category of requested discovery, it will serve them as defendants in this action, with the consequence that they will more likely than not cease supplying Kraff's with Pendleton products. The Kraff's defendants argue that the chilling effect of such an outcome would effectively foreclose its current business model in its entirety.

I agree with the Kraff's defendants that the identity of a business's suppliers can constitute protectable confidential information. *See, e.g., Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 554, n. 2 (C.D. Cal. 2007). Moreover, although there is a protective order in place in this action, and the Kraff's defendants could produce the requested information subject to the highest level of protection provided for thereunder, I agree with the Kraff's defendants that, because the currently unidentified suppliers are defendants in this action, effectively the protective order lacks any capacity to afford the Kraff's defendants protection against the pressure Pendleton is in a position to bring to bear on their suppliers to stop doing business with them. However, I observe that issuance of an order denying Pendleton the requested discovery would have very little tendency to prevent Pendleton from bringing precisely that same pressure to bear in any event: it is entirely within Pendleton's power, without hint of impropriety, to write letters to all of its authorized trade accounts advising them of its lawsuit against the Kraff's defendants, reminding them of their (purported) obligation to refrain from selling Pendleton goods to resellers such as Kraff's and advising them that failure to comply with that obligation would

result in their inclusion as a named defendant in the same lawsuit. In addition, in the event Pendleton took any improper action calculated to cut the Kraff's defendants off from their suppliers of Pendleton products, a remedy would be available to the Kraff's defendants in the form of a cause of action against Pendleton for intentional interference with economic relations. I therefore conclude that the Kraff's defendants are not entitled to an order shielding them from the obligation to produce the requested information and documents.

## CONCLUSION

For the reasons set forth above, Pendleton's motion (#23) to compel production of discovery responses is granted in its entirety, and the Kraff's defendants are ordered to produce information and documents responsive to the discovery requests at issue within eleven days of the date hereof.

Dated this 21st day of November, 2014.

Honorable Paul Papak
United States Magistrate Judge