IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON WOOLEN MILLS, INC.,

      Plaintiff,

                                      3:14-CV-628-PK

v.                                     OPINION AND
                                        ORDER

KRAFF'S MEN'S WEAR CO., INC., DANIEL
P. JOHNSON, and JOHN DOE COMPANIES
1-20,

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Pendleton Woolen Mills, Inc. ("Pendleton"), filed this action against defendants

Kraff's Men's Wear Co., Inc. ("Kraff's"), Daniel P. Johnson (collectively with Kraff's, the "Kraff's

defendants"), and 20 Doe corporate defendants (collectively, the "Doe defendants") on April 16,

2014. Pendleton is in the business of designing, manufacturing, and selling woolen fabrics,

apparel, and blankets on both a wholesale and a retail basis, whereas both the Kraff's defendants

and the Doe defendants are in the business of selling such products on a primarily retail basis.

Pendleton sells its products at wholesale prices only to retailers with which it maintains an

Page 1 - OPINION AND ORDER

"approved Pendleton trade account," and all its products sold directly to such retailers are sold pursuant to a sales order containing a provision stating that the retailer "will not sell the goods, or any part thereof, to another dealer or to any other reseller, and will not sell the goods through the Internet without the written consent of Pendleton . . . ."

Prior to the events complained of in this lawsuit, Kraff's was in an "approved Pendleton trade account" relationship with Pendleton, and moreover had received Pendleton's express permission to manufacture and sell its own products incorporating Pendleton fabrics bearing Pendleton's copyrighted designs.  In 2006, however, Pendleton ended its wholesaler relationship with Kraff's and stopped selling its products directly to Kraff's, and in 2012 expressly withdrew its previously granted permission to Kraff's to produce new products incorporating Pendleton fabrics bearing Pendleton's copyrighted designs.  Notwithstanding the termination of Pendleton's wholesaler relationship with Kraff's and the withdrawal of Pendleton's permission to produce derivative works incorporating Pendleton's copyrighted designs, Kraff's allegedly continues to retail both what it holds out as authentic, first-quality Pendleton products and products of its own manufacture incorporating Pendleton fabrics with copyrighted designs.  It is Pendleton's position that, since 2006, the Kraff's defendants have acquired Pendleton products at wholesale rates from the Doe defendants, each of which is an authorized retailer of Pendleton products with a direct relationship to Pendleton operating under a contractual obligation to refrain from selling Pendleton products to any reseller such as Kraff's.  It is further Pendleton's position that the Kraff's defendants have over that same period violated Pendleton's trademarks and engaged in unfair competition both by using Pendleton's trademarks prominently in the advertisement and display of Pendleton products and by using their own trademarks, which Pendleton characterizes

Page 2 - OPINION AND ORDER

as deceptively similar to its registered marks, in the advertising and display of derivative works incorporating Pendleton fabrics. Arising out of that conduct, Pendleton alleges the Kraff's defendants' liability for copyright infringement under 17 U.S.C. § 501, trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in connection with trademarks in violation of 15 U.S.C. § 1125(a), common-law trademark infringement and unfair competition, and common-law intentional interference with economic relations (specifically, Pendleton's economic relationships with the Doe defendants). Pendleton further alleges the liability of each of the Doe defendants for common-law breach of contract. This court has federal-question jurisdiction over Pendleton's federal claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Pendleton's state-law claims pursuant to 28 U.S.C. § 1367.

On October 1, 2014, Pendleton moved to compel the Kraff's defendants to respond to certain of Pendleton's discovery requests, including requests for the identities of the Doe defendants. On November 7, 2014, while Pendleton's motion to compel was pending before this court, the Kraff's defendants moved for partial summary judgment as to Pendleton's intentional interference with economic relations claim only. On November 21, 2014, I granted Pendleton's motion to compel in its entirety. On December 5, 2014, the Kraff's defendants moved for review of my disposition of Pendleton's motion to compel. Effective February 2, 2015, Judge Hernandez affirmed my order compelling the Kraff's defendants to comply with the discovery requests that were the subject of Pendleton's motion of October 1, 2014.

Now before the court is Pendleton's Federal Civil Procedure Rule 56(d) motion (#35) to deny the Kraff's defendants' pending motion for partial summary judgment or to defer further proceedings in connection therewith in order to provide Pendleton the opportunity to conduct

further discovery bearing on its intentional interference with economic relations claim and/or the

Kraff's defendants' asserted defenses thereto. I have considered the motion, telephonic oral

argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set

forth below, Pendleton's motion is granted, further proceedings in connection with the Kraff's

defendants' motion for partial summary judgment are stayed as discussed below.

## LEGAL STANDARD

If a nonmovant shows by affidavit or declaration that, for specified reasons, it
cannot present facts essential to justify its opposition [to an opposing party's
motion for summary adjudication], the court may:

    (1)    defer considering the motion or deny it;

    (2)    allow time to obtain affidavits or declarations or to take discovery;
          or

    (3)    issue any other appropriate order.

Fed. R. Civ. P. 56(d). Although the predecessor codification of Rule 56(d), like Rule 56(d) itself,

"facially g[ave] judges the discretion to disallow discovery when the non-moving party cannot

yet submit evidence supporting its opposition, the Supreme Court . . . restated the rule as

requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the

opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l v.

Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 n.5 (1986).[1] Moreover, courts construing the predecessor codification have found that

---

[1] It appears to be generally accepted that case law construing the predecessor codification
of Rule 56(d) (which did not significantly differ in its gravamen from that of the current
codification, *see* Fed. R. Civ. P. 56, Committee Notes on Rules, 2010 Amendment) remains
applicable to the current Rule 56(d). *See, e.g., Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169,
1169 n. 8 (9th Cir. 2011); *see also In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d
916, 927 n. 4 (S.D. Cal. 2012) ("Precedent under [former] Rule 56(f) applies to [current] Rule

"[w]here. . . a summary judgment motion is filed . . . early in the litigation, before a party has had

any realistic opportunity to pursue discovery relating to its theory of the case, district courts

should grant any Rule 56([d]) motion fairly freely." *Burlington N. Santa Fe R.R. v. Assiniboine

& Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003), *citing*

*Metabolife*, 264 F.3d 832 at 846.  The *Burlington* court cited the court for the Fifth Circuit with

approval for the proposition that "continuance of a motion for summary judgment for purposes of

discovery should be granted almost as a matter of course unless the non-moving party has not

diligently pursued discovery of the evidence." *Id.* at 773-774, *quoting Wichita Falls Office*

*Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992).

## MATERIAL PROCEDURAL HISTORY AND BACKGROUND

As noted above, on October 1, 2014, Pendleton moved to compel the Kraff's defendants

to respond to certain of Pendleton's discovery requests, including requests for the identities of the

Doe defendants, and Judge Hernandez affirmed that disposition effective February 2, 2015.  Also

as noted above, on November 7, 2014, while Pendleton's motion to compel was still pending, the

Kraff's defendants moved for partial summary judgment as to Pendleton's intentional interference

with economic relations claim against them only.

The elements of a claim for intentional interference with economic relations under

Oregon law are discussed below; of those elements, the Kraff's defendants challenge, by and

through their pending motion for partial summary judgment, only Pendleton's ability to establish

that the complained-of interference was accomplished for an improper purpose (to be actionable,

interference must have been accomplished either by improper means or for an improper purpose;

---

56(d)"), *citing Roberts*, 660 F.3d at 1169.

Page 5 - OPINION AND ORDER

the Kraff's defendants do not at this stage of these proceedings challenge Pendleton's ability to

establish that the interference was accomplished by improper means) and/or to establish that the

complained-of interference caused Pendleton to incur cognizable damages (to be actionable,

interference must have caused the complaining party to incur damages).

On November 25, 2014, Pendleton filed the Rule 56(d) motion now before the court. By

and through its motion, Pendleton took the position that before it can litigate the Kraff's

defendants' motion for partial summary judgment, it must conduct discovery in connection

generally with both the challenged elements of its claim and the Kraff's defendants' asserted

defenses thereto, including the so-called business-competitor defense and the first-sale defense,

each of which the Kraff's defendants have expressly invoked in connection with the intentional

interference with economic relations claim.

## ANALYSIS

As a preliminary matter, Pendleton proffers the assertion that it has been diligent in its

conduct of discovery in this action, and on that basis argues (under *Burlington*, *supra*) that its

motion should be granted on the simple ground that, notwithstanding its diligence, material

discovery is not yet complete. Pendleton additionally offers the preliminary argument that its

motion should be summarily granted because it disputes the factual basis of various statements

made by the Kraff's defendants in support of their motion for partial summary judgment.

I agree with Pendleton that nothing in the record could support the conclusion that

Pendleton has been other than diligent in its conduct of discovery, and further agree that

*Burlington* stands for the proposition that, at an early stage of discovery such as this, a Rule 56(d)

motion should be granted "fairly freely" and "almost as a matter of course." *Burlington*, 323 F.3d

at 773, 773-774.  However, I do not read *Burlington* as standing for the proposition that Rule

56(d) discovery should be granted even where demonstrably futile, *i.e.* where requested discovery

is immaterial to determination of the merits of any claim or defense at issue in connection with a

pending motion for summary adjudication.  I find on that basis that disposition of Pendleton's

motion must rest on analysis of whether specific discovery identified with particularity by

Pendleton in support of its Rule 56(d) motion is necessary for Pendleton to litigate the Kraff's

defendants' pending dispositive motion, and reject Pendleton's argument that such disposition can

rest on a general finding that the pending motion was prematurely filed or that the parties

generally dispute questions of fact.  I therefore undertake to analyze the legal issues raised by the

Kraff's defendants' pending motion for partial summary judgment and the materiality of

Pendleton's identified discovery matters thereto.

> Under Oregon law:
>
> To state a claim for intentional interference with economic relations, a plaintiff must allege:  (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages.

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999), *citing McGanty v.*

*Staudenraus*, 321 Or. 532, 535 (1995).  "Deliberate interference alone does not give rise to tort

liability."  *Id.*; *see also Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209-210 (1973)

("[A] claim [of tort liability for intentional interference with economic relations] is made out

when interference resulting in injury to another is wrongful by some measure beyond the fact of

the interference itself.  Defendant's liability may arise from improper motives or from the use of

improper means. They may be wrongful by reason of a statute or other regulation, or a

recognized rule of common law, or perhaps an established standard of a trade or profession.").

> The *Northwest Natural Gas* court specified that:

> To be entitled to reach a jury, a plaintiff must not only prove that defendant[s] intentionally interfered with [its] business relationship but also that defendant had a duty of non-interference; *i.e.*, that [they] interfered for an improper purpose rather than for a legitimate one, or that defendant[s] used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.

*Northwest Natural Gas*, 328 Or. at 498 (citations, internal quotation marks omitted). The court

further explained that:

> [I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff "as such." And, **if liability in tort is based on an actor's means, then the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law**, or, perhaps, an established standard of a trade or profession.

*Id.* (citations omitted; emphasis supplied). Under Oregon law, therefore, a third-party's

interference with another party's economic relations is not improperly motivated when its

purpose is the pursuit of the third parties' own interests. *See, e.g., Eusterman v. Northwest

Permanente, P.C.*, 204 Or. App. 224, 238 (2006) ("not improper" for a corporate party's actions

to be motivated to maximize its profits); *Top Service*, 283 Or. at 212 (not improper for a party to

be motivated to pursue its own business purposes "as it saw them").

> Moreover:

> "Improper purpose" in interference with economic relations cases (sometimes referred to as "improper motive") is analyzed under Oregon law by reference to certain provisions of the *Restatement (Second) of Torts* (1974). *See, e.g., Uptown Heights Associates v. Seafirst Corp.*, 320 Ore. 638, 653, 891 P.2d 639 (1995) (referring to *Restatement* at § 766); *Top Service Body Shop v. Allstate Ins. Co.*,

283 Ore. 201, 206-10, 582 P.2d 1365 (1978) (referring to section 766 of the original Restatement of Torts (1939) as well as to sections 766, 776B, and 767 of the tentative draft of the *Restatement (Second)* concerning "improper motives" and "improper means"). While *Restatement* section 766 generally describes the components of the tort, section 768 specifically concerns intentional interference with business relations when the parties are business competitors. Section 768(1) provides:

> "One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

> "(a)  the relation concerns a matter involved in the competition between the actor and the other and

> "(b) the actor does not employ wrongful means and

> "(c) his action does not create or continue an unlawful restraint of trade and

> "*(d) his purpose is at least in part to advance his interest in competing with the other*."

(Emphasis added.)  Comment g to section 768 amplifies subsection (d):

> "The rule stated in this Section developed to advance the actor's competitive interest and the supposed social benefits arising from it. *If his conduct is directed, at least in part, to that end, the fact that he is also motivated by other impulses, as, for example, hatred or a desire for revenge is not alone sufficient to make his interference improper.*  But if his conduct is directed solely to the satisfaction of his spite or ill will and not at all to the advancement of his competitive interests over the person harmed, his interference is held to be improper."

(Emphasis added.)

*Douglas Med. Ctr. LLC v. Mercy Med. Ctr.*, 203 Or. App. 619, 630-631 (2006) (footnote omitted; emphasis original).  Section 768 of the Restatement (Second) of Torts further provides that "[t]he fact that one is a competitor of another for the business of a third person does not

prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will." Restat 2d. of Torts, § 768(2).

By contrast, where the parties to an intentional interference with economic relations claim are not business competitors, the improper purpose requirement is satisfied where the interfering party's motive is in part improper, without regard to whether that party's motive is, in addition, in part to advance that party's own business interests. *See, e.g., Top Service*, 283 Or. at 209-211; Restat 2d. of Torts, § 766.

To satisfy the improper means requirement, the means employed by the interfering party must likewise "be independently wrongful by reason of statutory or common law," and the Oregon courts have found "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood" to constitute improper means for purposes of the tort. *Douglas Med. Ctr.*, 203 Or. App. at 634, *quoting Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 601 (1989).

As noted above, in support of their pending motion for partial summary judgment the Kraff's defendants take the position that Pendleton cannot establish that the Kraff's defendants' alleged interference with Pendleton's economic relations with the Doe defendants was accomplished for any improper purpose. Specifically, the Kraff's defendants argue that, because they are business competitors of Pendleton's and because it cannot seriously be disputed that Kraff's was at all material times motivated, at least in part, to further its own business interests, under Section 768 of the Restatement (Second) of Torts and *Douglas*, 203 Or. App. at 630-631, its purported interference cannot have been motivated by improper purpose. Pendleton counters that if the Kraff's defendants intend to invoke the business-competitor defense, Pendleton is

Page 10 - OPINION AND ORDER

entitled to conduct discovery regarding whether the Kraff's defendants are its business competitors prior to disposition of the Kraff's defendants' pending motion for partial summary judgment.

I disagree with Pendleton's argument. On the current record, there appears to be no grounds either for serious dispute that Pendleton and the Kraff's defendants are business competitors in some degree or for concluding that the Kraff's defendants could somehow be estopped from asserting that they are business competitors. The parties are in agreement that both the Kraff's defendants and Pendleton derive a portion of their respective income streams from the retail sale of Pendleton products. In consequence, Pendleton's asserted need for discovery to determine whether the parties are business competitors provides no grounds for granting Pendleton's Rule 56(d) motion. However, because it is Pendleton's position that the complained-of interference was effected by improper means – specifically, through inducing the Doe defendants to breach their contracts with Pendleton[2] and/or through deceit or misrepresentation – and because the Kraff's defendants expressly do not offer argument in support of summary adjudication of the improper means element of Pendleton's claim, the parties' dispute over improper means is effectively a red herring for purposes of determining the merits of Pendleton's Rule 56(d) motion. That is, the Kraff's defendants' argument that their partial summary judgment motion can be resolved as a matter of law without need for further

---

[2] As acknowledged in Section 768(2) of the Restatement (Second) of Torts, to induce breach of a contract not terminable at will constitutes improper means for purposes of the tort. Here, it appears clear that, to the extent the purported contracts at issue may be valid and enforceable (a question not currently properly before the court), they were not terminable at will, in that to interpret them as such would necessarily render the purported contractual obligation to refrain from selling Pendleton products to resellers illusory, and the purported contractual agreement therefore a nullity.

Page 11 - OPINION AND ORDER

discovery necessarily stands or falls with those defendants' argument that no discovery is

necessary for the court to determine that Pendleton cannot establish that it incurred cognizable

damages caused by their purported interference.

As to the questions of damages and causation, Pendleton notes that the Kraff's defendants

expressly invoke the so-called first-sale doctrine in support of their theory that their conduct

cannot have caused Pendleton to incur damages. The first-sale doctrine, properly understood, is

a creature of copyright law and, separately, of trademark law. In copyright law, the first-sale

doctrine is a statutorily authorized affirmative defense against claims of copyright infringement.

*See* 17 U.S.C. § 109(a); *see also, e.g., Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir.

2010). Under the doctrine, "'the owner of a particular copy . . . lawfully made under [the

Copyright Act], or any person authorized by such owner, is entitled, without the authority of the

copyright owner, to sell or otherwise dispose of the possession of that copy.'" *UMG Recordings,

Inc. v. Augusto*, 628 F.3d 1175, 1179 (9th Cir. 2011), *quoting* 17 U.S.C. § 109(a). The

legislative history of the Copyright Act clearly establishes the intent of the authors of Section

109(a) to place the burden on the party asserting the first sale doctrine as an affirmative defense

to establish that the copyrighted work at issue "was lawfully made or acquired," H.R. Rep. No.

94-1476, 80-81 (1976).

In trademark law:

Since 1924, courts have recognized a basic limitation on the right of a trademark
owner under the Lanham Act to control the distribution of its own products.
Beginning with *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 68 L. Ed. 731, 44 S. Ct.
350 (1924), courts have consistently held that, with certain well-defined
exceptions, the right of a producer to control distribution of its trademarked
product does not extend beyond the first sale of the product. Resale by the first
purchaser of the original article under the producer's trademark is neither

trademark infringement nor unfair competition.

> The "first sale" rule provides a sensible and stable accommodation between strong and potentially conflicting forces. By guaranteeing that a product will be identified with its producer, it serves the legitimate purposes of trademark law - the producer gains the good will associated with the quality of its product, and the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer. On the other hand, the "first sale" rule preserves an area for competition by limiting the producer's power to control the resale of its product. The "first sale" doctrine has proven to be a reliable and useful guide in an area in which a high volume of business-driven litigation must be expected.

*Sebastian Int'l v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074-1075 (9th Cir. 1995) (footnotes

omitted). The first-sale doctrine is applicable in trademark actions without regard to whether

"resale by the first purchaser under the producer's trademark creates a likelihood of consumer

confusion." *Id.* at 1075; *see also id.* at 1076.

As Pendleton acknowledges, as such the first-sale doctrine is of no direct relevance to the

question of damages available for tortious intentional interference with economic relations.[3]

Nevertheless, Pendleton offers the argument that, because the Kraff's defendants (however

inappositely) have expressly invoked the doctrine in support of their motion for partial summary

judgment, Pendleton is entitled to discovery as to the elements of the first-sale doctrine before

the merits of the Kraff's defendants' motion may be considered. Again, I disagree with

Pendleton's argument. Because the first-sale doctrine is inapposite to the question whether

Pendleton can prove that it was damaged by the Kraff's defendants alleged interference with

Pendleton's contractual relations with the Doe defendants, the Kraff's defendants' misplaced

---

[3] I agree with the Kraff's defendants that it is not inherently unlawful to resell products purchased from another. However, the first-sale doctrine, whether considered as a creature of copyright or of trademark law, incorporates elements in addition to that unobjectionable proposition. Moreover, Pendleton's theory of damages is not premised on the proposition that resale of purchased products is inherently unlawful.

Page 13 - OPINION AND ORDER

reliance thereon in support of their motion for partial summary judgment does not provide grounds for granting Pendleton's Rule 56(d) motion.

In an effort to meet its burden to establish that discovery could yield evidence sufficient to support the conclusion that it suffered cognizable damages caused by the Kraff's defendants' complained-of interference, Pendleton offers several specific theories of damages (none of which rely on the Kraff's defendants' violation of its registered trademarks or copyrights), specifically damage to its reputation, consumer confusion, loss of goodwill, loss of control of its distribution chain, reduced sales of Pendleton products by other retailers, and reduced profits to Pendleton in connection with the Doe defendants' resale of Pendleton products to the Kraff's defendants. As to Pendleton's theories that the complained-of interference could have caused damage to its reputation, consumer confusion, or loss of customer goodwill, it is clear that the complained-of interference could not have caused any such damages, in that if Pendleton suffered such damages it can only have done so as a result of the conduct underlying its various trademark and copyright claims, and not as a result of the Kraff's defendants' alleged purchase of Pendleton products at wholesale prices from the Doe defendants. Moreover, Pendleton's loss of control over its distribution chain, if established, would not constitute damage to Pendleton unless such loss of control provably resulted in measurable lost profits to Pendleton, either through reduced net sales of Pendleton products (taking into account the sales to the Kraff's defendants) or reduced net profits on such sales (taking into account the profits earned on the sales to the Kraff's defendants).

The dispositive question for the court, therefore, is whether discovery could uncover evidence sufficient to establish that the complained-of purchases from the Doe defendants caused

Page 14 - OPINION AND ORDER

Pendleton damages in the form of either reduced net sales of Pendleton products or reduced net profits to Pendleton on all sales of Pendleton products. At this very early stage of these proceedings, I am unwilling to find that discovery identified by Pendleton, including discovery regarding the prices at which the Doe defendants sold Pendleton products to the Kraff's defendants and the rates at which the Doe defendants compensated Pendleton in connection with those sales (and other discovery necessary to obtain such information, including the identities of the Kraff's defendants' suppliers of Pendleton products), could not as a matter of law establish that Pendleton suffered damages caused by the complained-of interference. No evidence adduced by any party forecloses, for example, the possibility that the Kraff's defendants induced the Doe defendants to breach their contractual obligation to Pendleton to refrain from the sale of Pendleton products to any reseller thereof (perhaps through misrepresentation), and that one or more Doe defendants subsequently negotiated a lower rate at which to compensate Pendleton on the sale of Pendleton products to the Kraff's defendants (perhaps misrepresenting that the products were unpopular and would not be purchased by members of the public at the full retail price).

Because Pendleton could plausibly prevail in connection with the Kraff's defendants' motion for partial summary judgment on the basis of at least some of the discovery identified by Pendleton in support of its motion, Pendleton's Rule 56(d) motion is granted, and further proceedings in connection with the Kraff's defendants' motion for partial summary judgment are stayed.

## CONCLUSION

For the reasons set forth above, Pendleton's Federal Civil Procedure Rule 56(d) motion

Page 15 - OPINION AND ORDER

(#35) for enlargement of time is granted, and further proceedings in connection with the Kraff's

defendants' pending motion (#29) for partial summary judgment are stayed.  The parties are

directed to confer and, within seven days of the date hereof, to submit, either jointly or, if

impossible, separately, a proposed discovery schedule and a proposed summary-judgment

briefing schedule, in compliance with this court's order (#40) dated December 8, 2014.


Dated this 25th day of February, 2015.

Honorable Paul Papak
United States Magistrate Judge

Page 16 - OPINION AND ORDER