IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON WOOLEN MILLS, INC.,

    Plaintiff,

v.

KRAFF'S MEN'S WEAR CO., INC., DANIEL
P. JOHNSON, and JOHN DOE COMPANIES
1-20,

    Defendants.

3:14-CV-628-PK

OPINION AND
ORDER

PAPAK, Magistrate Judge:

    Plaintiff Pendleton Woolen Mills, Inc. ("Pendleton"), filed this action against defendants Kraff's Men's Wear Co., Inc. ("Kraff's"), Daniel P. Johnson (collectively with Kraff's, the "Kraff's defendants"), and 20 Doe corporate defendants (collectively, the "Doe defendants") on April 16, 2014. Pendleton is in the business of designing, manufacturing, and selling woolen fabrics, apparel, and blankets on both a wholesale and a retail basis, whereas both the Kraff's defendants and the Doe defendants are in the business of selling such products on a retail basis. Pendleton sells its products at wholesale prices only to retailers with which it maintains an "approved

Page 1 - OPINION AND ORDER

Pendleton trade account," and all its products sold directly to such retailers are, according to Pendleton's allegations, sold pursuant to a sales order or other contract containing a provision stating that the retailer "will not sell the goods, or any part thereof, to another dealer or to any other reseller, and will not sell the goods through the Internet without the written consent of Pendleton . . . ."

Prior to the events complained of in this lawsuit, Kraff's was in an "approved Pendleton trade account" relationship with Pendleton, and moreover had received Pendleton's express permission to manufacture and sell its own products incorporating Pendleton fabrics bearing Pendleton's copyrighted designs. In 2006, however, Pendleton ended its wholesaler relationship with Kraff's and stopped selling its products directly to Kraff's, and in 2012 Pendleton expressly withdrew its previously granted permission to Kraff's to produce new products incorporating Pendleton fabrics bearing Pendleton's copyrighted designs. Notwithstanding the termination of Pendleton's wholesaler relationship with Kraff's and the withdrawal of Pendleton's permission to produce derivative works incorporating Pendleton's copyrighted designs, Kraff's allegedly continues to retail both what it holds out as authentic, first-quality Pendleton products and products of its own manufacture incorporating Pendleton fabrics with copyrighted designs. It is Pendleton's position that, since 2006, the Kraff's defendants have acquired Pendleton products at wholesale rates from the Doe defendants, each of which is an authorized retailer of Pendleton products with a direct relationship to Pendleton operating under a contractual obligation to refrain from selling Pendleton products to any reseller such as Kraff's. It is further Pendleton's position that the Kraff's defendants have over that same period violated Pendleton's trademarks and engaged in unfair competition both by using Pendleton's trademarks prominently in the

Page 2 - OPINION AND ORDER

advertisement and display of Pendleton products and by using their own trademarks, which Pendleton characterizes as deceptively similar to its registered marks, in the advertising and display of derivative works incorporating Pendleton fabrics. Arising out of that conduct, Pendleton alleges the Kraff's defendants' liability for copyright infringement under 17 U.S.C. § 501, trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in connection with trademarks in violation of 15 U.S.C. § 1125(a), common-law trademark infringement and unfair competition, and common-law intentional interference with economic relations (specifically, Pendleton's economic relationships with the Doe defendants). Pendleton further alleges the liability of each of the Doe defendants for common-law breach of contract. This court has federal-question jurisdiction over Pendleton's federal claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Pendleton's state-law claims pursuant to 28 U.S.C. § 1367.

On August 20, 2014, I entered a protective order (#21) pursuant to the parties' stipulation. On October 1, 2014, Pendleton moved to compel the Kraff's defendants to respond to certain of Pendleton's discovery requests, including requests for the identities of the Doe defendants. On November 7, 2014, while Pendleton's motion to compel was pending before this court, the Kraff's defendants moved for partial summary judgment as to Pendleton's intentional interference with economic relations claim only. On November 21, 2014, I granted Pendleton's motion to compel in its entirety. On November 25, 2014, Pendleton moved pursuant to Federal Civil Procedure Rule 56(d) for a continuance of the Kraff's defendants' motion for partial summary judgment to allow for specified discovery before preparing its opposition thereto, including but not limited to the discovery that was the subject of its previously filed motion to compel. On

December 5, 2014, the Kraff's defendants moved for review of my disposition of Pendleton's motion to compel. Effective February 2, 2015, Judge Hernandez affirmed my order compelling the Kraff's defendants to comply with the discovery requests that were the subject of Pendleton's motion of October 1, 2014. On February 25, 2014, I granted Pendleton's Rule 56(d) motion.

On February 27, 2015, the Kraff's defendants produced documents responsive to the requests within the scope of Pendleton's previously filed motion to compel. A majority of the documents produced were designated as "Highly Confidential-Attorneys' Eyes Only" under the parties' stipulated protective order. Among the documents so designated were documents identifying the identities of the Doe defendants and documents identifying the identities of third parties the Kraff's defendants relied upon in the production of derivative products incorporating Pendleton fabrics. Subsequently, counsel for Pendleton issued subpoenas *duces tecum* to the third parties so identified, without advice to Pendleton that they were so doing, and with instructions that the recipients refrain from contacting Pendleton regarding the subpoenas. It appears that counsel for Pendleton have received documents responsive to the subpoenas, and to date have refrained from disclosing those documents to Pendleton pending resolution of their challenge to the Kraff's defendants' designation of all documents identifying the identities of the third parties as "Highly Confidential-Attorneys' Eyes Only."

On March 12, 2015, this court granted the Kraff's defendants' motion to withdraw their then-pending motion for partial summary judgment with leave to refile at a later stage of these proceedings.

Now before the court is the Kraff's defendants' motion (#59) for a protective order, by and through which the Kraff's defendants seek this court's leave to designate all documents,

Page 4 - OPINION AND ORDER

testimony, or other information setting forth the identities of the Doe defendants or of the third parties the Kraff's defendants relied upon in the production of derivative products incorporating Pendleton fabrics as "Highly Confidential-Attorneys' Eyes Only." I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, the Kraff's defendants' motion is denied.

## LEGAL STANDARD

"A party . . . from whom discovery is sought may move for a protective order in the court where the action is pending. . . ." Fed. R. Civ. P. 26(c)(1). Rule 26(c) provides that a court may for "good cause" issue such a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

* * * [or]

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . .

*Id.* To obtain such a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery. Fed. R. Civ. P. 26(c)(1); *see also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002).

## MATERIAL PROCEDURAL HISTORY AND BACKGROUND

As noted above, effective August 20, 2014, Pendleton and the Kraff's defendants agreed to a Stipulated Protective Order. That order provides that certain documents produced in

discovery in this action may be "disclosed, given, shown, made available, or communicated, directly or indirectly, in any way" only to specified persons and only for purposes of this litigation. Specifically, documents designated by the producing party as "Confidential" may be disclosed only to the parties, their counsel, the authors of or persons with prior knowledge of such documents, independent experts, any mediator hired to assist in resolving the parties' dispute, the court and its staff, or other persons the parties agree in writing may consider such documents. *See* Stipulated Protective Order, ¶ 4(b). Documents designated as "Confidential – Outside Attorneys' Eyes Only" or an equivalent designation may only be disclosed to the parties' outside counsel of record, authors of or persons with prior knowledge of such documents, independent experts, any mediator hired to assist in resolving the parties' dispute, and the court and its staff. *See* Stipulated Protective Order, ¶ 4(c).

The Stipulated Protective Order creates a procedural framework whereby a party producing documents in discovery may designate specified documents as either "Confidential" or "Confidential – Outside Attorneys' Eyes Only" or an equivalent designation. *See* Stipulated Protective Order, ¶ 7. The Stipulated Protective Order further provides that the propounding party may challenge the producing party's designation of documents as either "Confidential" or "Confidential – Outside Attorneys' Eyes Only" or the equivalent, and that if the parties are unsuccessful in resolving their dispute over such designation, the designating party may move the court for an order to protect the designated materials from disclosure. *See* Stipulated Protective Order, ¶ 9.

On March 30, 2015, Pendleton challenged the Kraff's defendants' designation of all materials identifying the Doe defendants and the third parties upon whom the Kraff's defendants

Page 6 - OPINION AND ORDER

relied in the production of derivative works incorporating Pendleton fabrics as "Highly Confidential-Attorneys' Eyes Only" (which designation is undisputedly the clear equivalent of the "Confidential – Outside Attorneys' Eyes Only" designation provided for in the parties' Stipulated Protective Order). The parties having been unsuccessful in resolving Pendleton's challenge, pursuant to the applicable provisions of the parties' Stipulated Protective Order, the Kraff's defendants now move the court to protect the designated materials from disclosure to Pendleton.

## ANALYSIS

To obtain a protective order, the party resisting discovery or seeking limitations on production or dissemination of discovered documents must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery. Fed. R. Civ. P. 26(c)(1). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-1211, citing *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see also San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (to obtain a protective order a party must make a "particularized showing of good cause with respect to any individual document"). The Ninth Circuit has characterized the burden the resisting party must meet as "heavy." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)

If the party seeking protection establishes that the requisite particularized harm will occur absent a protective order, the courts must then balance the public interest in access to the information against the party's private interest in shielding it from public scrutiny to determine

Page 7 - OPINION AND ORDER

whether a protective order is appropriate. *See Phillips*, 307 F.3d at 1211, *citing Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

> Moreover, Local Rule 26.6 provides as follows:
>
> A party or person asserting there is good cause for the Court to make an order that would limit access to discovery materials not filed with the Court, or would authorize a party or person to file any materials with the Court under seal, **must show with respect to each particular material or category of materials that specific prejudice or harm will result if no order is granted. The showing must be sufficiently detailed to permit the Court in its good cause examination to identify specific factors supporting entry of the order sought.** Where the order sought would authorize a party to file materials under seal, the showing also must articulate why, as an alternative to filing under seal, the information sought to be protected could not be redacted. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning does not satisfy the requirements of this rule. The showing must be made even if the other party stipulates to the entry of the order.

L.R. 26.6 (emphasis supplied).

As a preliminary matter, I do not find that the Kraff's defendants have met their burden to establish that, if the motion were granted, the protections available for documents bearing the requested designation would have any significant tendency to prevent the specific prejudice or harm those defendants invoke in support of their motion. It is the Kraff's defendants' position that, because Pendleton is suing the Doe defendants and can be expected to attempt to influence the Doe defendants to stop doing business on other than a retail basis with the Kraff's defendants, Pendleton's knowledge of the identities of the Doe defendants could be expected to lead to action on Pendleton's part calculated to cause Kraff's to suffer loss of revenue and perhaps even the destruction of its business model. The problem with the Kraff's defendants' reasoning is that, as I noted in my order (#34) dated November 21, 2014, Pendleton does not need to know specifically which of its wholesale purchasers, if any, are the Kraff's defendants' suppliers of Pendleton

Page 8 - OPINION AND ORDER

products at wholesale prices in order to contact *all* of its wholesale purchasers to advise them that it is taking legal action against those suppliers. That is, if even without disclosure to Pendleton of the documents currently bearing the "Highly Confidential-Attorneys' Eyes Only" designation (the "AEO" designation) Pendleton can contact all of its wholesale accounts with advice that it is suing all parties supplying the Kraff's defendants with Pendleton products at less than retail prices and that it will terminate or refuse to renew its wholesale arrangements with such parties, to grant the Kraff's defendants' motion would not have any significant tendency to protect the Kraff's defendants from the harms from which they assert a need for protection. Moreover, the Kraff's defendants do not assert any harms that might flow from Pendleton's knowledge of the identities of the third parties upon whose assistance the Kraff's defendants rely in the production of Kraff's products incorporating Pendleton fabrics.

Even if the Kraff's defendants had succeeded in establishing that the requested order could protect them from the potential harms they invoke, I agree with Pendleton that to grant the requested order would cause significantly more mischief than it has any potential to prevent. If Pendleton's counsel were prohibited from discussing with Pendleton the nature of Pendleton's business dealings with each specific Doe defendant or determining what the contractual relationships are between Pendleton and each Doe defendant, not only would Pendleton's counsel be severely impaired in their ability to prosecute Pendleton's claims against the Doe defendants, they would similarly be severely impaired in their ability to prosecute Pendleton's claims against the Kraff's defendants as well. If Pendleton cannot advise its counsel as to what fabrics it sold and at what prices to the Doe defendants, counsel will be unable to determine whether the Pendleton fabrics the Kraff's defendants sell at retail or incorporate into new products were sold

Page 9 - OPINION AND ORDER

as first-quality goods, as factory seconds, or as used goods, counsel will have no ability to authenticate the contracts pursuant to which such goods were sold, counsel will have no basis on which to calculate Pendleton's damages (if any), and so on. In addition, judicial efficiency would be significantly impaired if the motion were to be granted, as it would likely necessitate the bifurcation of proceedings against the Kraff's defendants from proceedings against the Doe defendants, and would create significant logistical problems for the trial of both.

Finally, if Pendleton were to use information contained in the documents currently bearing the AEO designation in any improper fashion to the Kraff's defendants' detriment, the Kraff's defendants would have available to them the same recourse currently available to them in the event Pendleton were improperly to cause them harm in the absence of that information, namely legal action, either through one or more counterclaims filed in this action or through one or more claims against Pendleton in a separate lawsuit.

Because the requested protective order would not have any significant tendency to prevent the harms the Kraff's defendants invoke in support of their motion, because Pendleton has a compelling need to review the documents and information at issue with its counsel, because to grant the requested order would significantly impair judicial efficiency in the resolution of this matter, because disclosure of the documents and information at issue would confer no unjust competitive advantage over the Kraff's defendants on Pendleton, and because adequate recourse is available to the Kraff's defendants in the event of any improper use of the documents and information at issue by Pendleton, the Kraff's defendants' motion is denied. The parties are directed to treat the documents produced to Pendleton on February 27, 2015, under the AEO designation as subject only to the "Confidential" designation as provided in the parties' Stipulated

Page 10 - OPINION AND ORDER

Protective Order.

## CONCLUSION

For the reasons set forth above, the Kraff's defendants' motion (#59) for a protective order is denied as discussed above.

Dated this 13th day of May, 2015.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge